TEXAS EMPLOYERS INSURANCE ASSOCIATION V. FRANCIS A. ARNOLD.

No. 6596. Decided April 15, 1936.
(92 S. W., 2d Series, 1019.)

*Todd & Crowley, Lawther, Cox & Cramer,* and *Wm. M. Cramer,* all of Dallas, for plaintiff in error.

*W. L. Coley,* of Fort Worth, for defendant in error.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This is a suit under the Workmen's Compensation Law. The defendant in error, Francis A. Arnold, herein sometimes designated as the claimant, is the surviving adult son of the deceased employee, J. P. Arnold. By agreement of the parties in the trial court all fact questions were eliminated except the issue whether the claimant was a beneficiary of the deceased employee. That issue was submitted to a jury and, upon an affirmative answer thereto, judgment was rendered in the claimant's favor, which judgment was affirmed by the Court of Civil Appeals. 62 S. W. (2d) 609.

Our Workmen's Compensation Law, Article 8306, Section 8a, provides that compensation shall be for the sole and exclusive benefit of the surviving husband, wife, minor children, parents and stepmother of the deceased employee, without regard to the question of dependency and of dependent grandparents, children, brothers and sisters. It further provides that the right of such beneficiary or beneficiaries to recover compensation for death shall be determined by the facts that exist at the date of the death of the employee. J. P. Arnold was not survived by a wife, minor child, parent or stepmother. He was survived by brothers, sisters, adult children and grand-

children, but none of them, except defendant in error, claims to have been in any sense dependent upon him at the time of his death. The sole question for decision is: Was the claimant a dependent of his father on the date of the latter's death, October 9, 1928? We shall make such statement of the facts as will throw light upon that one question.

The employee, J. P. Arnold, received gunshot wounds in Fort Worth, Texas, on October 8, 1928, from which he died on the following day. He had been living there for many years prior to his death. The claimant, Francis A. Arnold, was his son, aged 42 years, who resided in the State of Pennsylvania. The claimant's wife died in February, 1921, leaving him with two daughters, aged 8 and 10 years. In August of the same year his sister, Mrs. George R. Campbell, her husband and one of their children lost their lives in a fire, leaving three children, aged 3 weeks, 5 years and 8 years, respectively, to be cared for by him. A short time thereafter claimant sustained a serious injury to his knee, for which he received some compensation under the Workmen's Compensation Law of Pennsylvania. As a result of that injury he spent much time in different hospitals under the treatment of physicians and surgeons, and for several years was unable to support himself and family. Shortly after he sustained this injury his father went to Pennsylvania and arranged for the placing of his children and two of his sister's children in orphanages and for the adoption of his sister's other child by a Mr. and Mrs. Tobias. The evidence discloses that, for a few years after the death of claimant's wife his father made generous contributions to him. Whether they were made under such circumstances as would constitute him a dependent of his father during that period, we need not determine. Our question is whether the relation of dependency existed in 1928, particularly on October 9th of that year. The claimant's own testimony touching that issue was as follows:

"The first job I had after my accident was with the U G I Company of Philadelphia, late in 1925. I worked with them for about seven months, earning about $28.00 a week. I then got a job as salesman for Fuller & Johnson of Madison, Wisconsin, for whom I worked about a year and a half, and my salary was $150.00 a month. I left them November 1st, 1927, and had no work until April 1st, 1928. During the five months that I was off, I spent most of the time in hospitals. April 1st, 1928, I went to work for Hudson Manufacturing Company of Philadelphia, as a salesman at a salary of $150.00 a month

and expenses. I worked for them until October 8th, 1928, when I went to Texas and stayed there ten days and returned to Milton. On January 1st, 1928, I borrowed $3,000.00 on my home from Milton Trust and Safe Deposit Company and bought out a restaurant business from Orvis C. Yarrison. I took over a lease that Yarrison had for two years at $85.00 a month rent and also the water rent for the entire building, which amounted to about $15.00 a month. When I returned from Texas, I took over the active management of my restaurant.

"Q. While your father was helping between the years of 1921 and 1928, when he died, please state whether or not with his help you were able to meet your obligations and take care of your family.

"A. I was not able to meet my obligations and take care of my family with my father's help between the years of 1921 and 1928, when he died. I became heavily indebted by reason of numerous operations, hospital bills, doctor bills, and long period of forced unemployment.

"Q. Did your father do anything looking to your support during the period of time between 1921 and 1928?

"A. He helped me all that time between 1921 and 1928, sending me checks anywhere from $5.00 to $100.00 at a time. He also sent money direct to the Evangelical Orphanage for my daughters.

"Q. Will you state as nearly as you can what portion of the time between 1921 and 1928 you were disabled by reason of your injury, and ill health, as above stated?

"A. I was practically entirely disabled from the time of my accident until the latter part of 1926, when I went to work for the U. G. I. Company. Since that time I have been in hospitals at different times during the year, possibly at least on the average of two months a year.

"Q. State if you can, approximately the total amount contributed to you by your father, J. P. Arnold, between 1921 and 1928?

"A. The total amount contributed to me by my father, J. P. Arnold, between 1921 and 1928, as near as I can state, was possibly $4,000 or more. After I got out of the hospital, and when I was still on crutches, my father sent me money to come to Texas on in order to regain my health and strength. During the time I was in Texas, he paid all my expenses back home. All of this was in addition to the $4,000.00.

"Q. Did you depend upon your father for these contributions over the period of time mentioned.

"A. I did depend on my father for these contributions."

On cross examination he identified an affidavit made by him before a justice of the peace in Pennsylvania on March 27, 1929, and testified that the statements therein made were true. The portion of that affidavit material to the question for decision is:

"I, Francis A. Arnold, am 42 years old and after the death of my first wife, Grace Arnold, in 1921, married Ruth Christy of Omaha, Nebraska, Oct. 15th, 1928, at Elmira, N. Y. The ceremony was performed by a Methodist Minister, R. Lewis Williams. Our present residence is at 34 Broadway, Milton, Penn. I rent my residence from Frank Reber of Milton and have resided there since August 1st, 1928. My daughter Ordalene who is 15 years old is away at school in Lewisburg Orphanage and my daughter Sarah Elizabeth is working in my restaurant located at 25 Broadway, Milton, Penn. and attended the first term of college at Bucknell University this past year and left because of a nervous break down. On date of 1-1-28 I bought out Orvis C. Yarrison for $3000 and took over the lease Yarrison had with Edward Lauth for a period of 2 years and pay $85.00 rent and also water rent for entire building which amounts to $15.00 per month. At the present time I have 6 employees, working regular and 2 working extra. My payroll amounts to $125 a week. Before I went into the restaurant business I worked as a salesman for Fuller & Johnson of Madison, Wis. I worked for this firm a year and a half. My income based on salary was $150 per month. I left the employ of this company November 1st, 1927. Before I worked for Fuller & Johnson I wasn't working and hadn't worked since 1921 when I was injured with the exception of a period of about 7 months before working with Fuller & Johnson I worked for the U. G. I. people of Philadelphia thru United Oxygen Mfg. Co. my earnings there was $28.00 a week. Then April 1st, 1928 I went to work for Hidson Mfg. Co. of Philadelphia as a salesman. My earnings were $150 a month and expenses and worked for firm until Oct. 8th, 1928 and then went down to Texas stayed there 10 days and then returned to Milton, Penn. and there took over the active management of my restaurant. I still own property at 441 Walnut St., Milton and rent same for $30.00 a month. When I went into the restaurant business I mortgaged my property on Walnut St. for $3000 same held by Milton Trust and Safe Deposit Co. which is also my bank. I carry life insurance with Northwestern Mutual Life

Ins. Company. On Oct. 28th, 1927, I bought a Chrysler 2 door sedan from Chrysler Dealers in Oswego, N. Y., and paid $1350 financed, paid for car in full in a year. On date of 2-26-29 I was in an auto accident and my car was smashed and collected $500 for damage. My restaurant isn't paying for my investment but I manage to get a living."

It is disclosed that the claimant's father, at the time of his death, was employed by the North Texas Iron & Steel Company at Fort Worth at an average wage of about $35.00 per week. He had been drawing that wage for more than a year. During the year 1927 he took vacation of two months and traveled in Palestine. His life insurance was left, not to claimant or his children, but to a grandchild living in Ft. Worth. He named the claimant as executor of his will.

■ Much has been written on the question of who is dependent under Workmen's Compensation Laws. Exhaustive annotations on the subject may be found in American Law Reports. The first annotation appears in 13 A. L. R., 686, and supplements appear in 30 A. L. R., 1253, 35 A. L. R., 1066, 39 A. L. R., 313, 53 A. L. R., 218, 62 A. L. R., 160 and 86 A. L. R., 865. In determining questions of dependency courts as a rule merely outline the elements thereof without undertaking to formulate exact definitions, but the idea inheres in the term itself that the relation must be such that one relies for support, in part at least, upon the aid of another. In Rock Island Bridge and Iron Works v. Industrial Commission, 287 Ill., 648, 122 N. E., 830, this definition is given, "In law a dependent is one who is sustained by another, or relies for support upon the aid of another; who looks to another for support, and relies on another for reasonable necessaries consistent with the dependent's position in life."

■ We well recognize that the question of dependency is generally one of fact to be determined by the trier of facts, and not by this Court; but where, as here, there is no dispute as to the facts, and they lead to a definite conclusion, it is our duty to announce that conclusion as a matter of law. Briefly summarized, these are the facts, as disclosed by the claimant's own testimony. At the date of the death of the employee the claimant was 42 years of age, the owner of a good sized restaurant, the owner of property of sufficient value to support a loan thereon of $3000.00, the owner of a Chrysler automobile, and, in addition, was drawing a salary of $150.00 per month, besides

expenses, as a salesman. At that time he evidently contemplated remarriage, for he was married in Elmira, N. Y., a few days after his father's death.

These facts, to our minds, lead to but one conclusion, and that is that claimant was not a dependent of his father, who lived hundreds of miles away and earned about $140.00 per month by laboring 10 hours per day, 5½ days per week.

The judgments of the Court of Civil Appeals and the trial court are both reversed and judgment will be here rendered that the claimant take nothing.

Opinion adopted by the Supreme Court April 15, 1936.