OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

November 2, 2000

Mr. Donald E. Powell  
Chair, Board of Regents  
The Texas A&M University System  
P.O. Box C-1  
College Station, Texas 77840-9021

Opinion No. JC-0302

Re: Validity of section 661.063, Government Code, with regard to payment for vacation balances accrued prior to September 1, 1997 (RQ-0246-JC)

Dear Mr. Powell:

The Texas A&M University System ("A&M") has asked this office whether section 661.063 of the Government Code might abrogate the vested vacation rights of certain A&M employees which accrued prior to September 1, 1997, and therefore violate article 1, section 16 of the Texas Constitution. Assuming *arguendo* that vacation entitlement is "a vested right of the employee that cannot be destroyed or impaired by his resignation, dismissal or separation from State employment," Tex. Att'y Gen. Op. No. M-1075 (1972) at 2, we conclude that the right which has vested is a right to be compensated for the time accrued, not a right to be so compensated at a particular rate or according to a particular formula. To hold otherwise, in our view, would violate "the established rule that all pension funds, financial assistance funds, annuities and such other benefits created by the Texas Legislature for the benefit of employees and other personnel of this State and the political subdivisions thereof as designated by statute or otherwise by law shall be subordinate to the right of the Legislature to abolish the system, diminish the accrued benefits, increase the benefits, change the eligibility for benefits or to otherwise alter or modify the method of payments of the benefits of any or all such funds." *Cook v. Employees Retirement Sys. of Texas*, 514 S.W.2d 329, 331 (Tex. Civ. App.–Texarkana 1974, writ ref'd n.r.e.). Accordingly, the change in the method of computing payment for vacation balances for certain state employees which became effective, pursuant to section 661.063 of the Government Code, on September 1, 1997, does not impair any vested right of an employee who leaves state service after that date.

As you explain the situation that gives rise to your question, prior to the amendment of section 661.063 by the 75th Legislature, all state employees were compensated for accrued vacation time "by multiplying the employee's rate of compensation on the date of separation from employment by the total number of hours accrued."[1] However, as amended, section 661.063(b) reads in relevant part, "The payment under this subchapter to a state employee who separates from

---

[1] Letter from Mr. Howard D. Graves, Chancellor, The Texas A&M University System, to Honorable John Cornyn, Attorney General of Texas at 2 (June 14, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

state employment while holding a position that does not accrue vacation time shall be computed according to this subsection. The employee's final rate of compensation in the last position held that accrues vacation time shall be multiplied by the employee's total number of hours of vacation time determined under Section 661.064." TEX. GOV'T CODE ANN. § 661.063(b) (Vernon Supp. 2000).

You point out that this change in the method of calculating the value of accrued vacation may significantly diminish that value for persons who transferred from positions which accrued vacation to those which did not at some time before September 1, 1997, and who had received one or more raises in pay in the interim. Request Letter, *supra* note 1, at 2-3. "[I]f they had separated from state employment prior to September 1, 1997 they would have received a greater amount for payment of their accumulated vacation than they will when they ultimately leave state employment." *Id.* at 3. You note that an opinion issued by this office in 1972, Attorney General Opinion M-1075, averred that "vacation entitlement is . . . a vested right of the employee that cannot be destroyed or impaired by his resignation, dismissal or separation from State employment. It is a right that becomes vested in him as it is earned and a State employee should be compensated for all vacation time duly accrued." Tex. Att'y Gen. Op. No. M-1075 (1972) at 2. In light of Opinion M-1075, you ask whether, in the context of this particular class of employees, the amended version of section 661.063 abrogates their vested rights. Request Letter, *supra* note 1, at 2-3.

As a preliminary matter, we note that, because contract questions usually involve disputed issues of fact of the sort this office cannot determine in the opinion process, this office does not construe such contracts in that process. Accordingly, we are not here making any conclusion about the particular contractual relation between A&M and any of its employees. We are concerned purely with the legal question of whether section 661.063 may violate the vested rights of the class of employees under consideration. We conclude that it does not.

Attorney General Opinion M-1075, on the basis of which your question is premised, is in our view of doubtful merit. It makes the rather broad assertion quoted above on the basis that the 1969 Appropriations Act described vacation entitlement as "*accrued*," and that "Webster's Third New International Dictionary defines the word *accrue* as follows: 'To come into existence as an enforceable claim; vest as a right.'" Tex. Att'y Gen. Op. No. M-1075 (1972) at 2. We are loath to overrule an opinion which does not appear to have been seriously questioned in the intervening twenty-eight years, *but see* Tex. Att'y Gen. Op. No. H-126 (1973), and accordingly we do not do so. But assuming *arguendo* that a right to be compensated for accrued vacation time is a vested right, it does not follow that an employee has a vested right to be compensated at a certain rate or according to a certain formula.

As Attorney General Opinion M-1075 itself notes, "These accumulations of rights are limited by statute." Tex. Att'y Gen. Op. No. M-1075 at 2. The Supreme Court of the United States noted in a related context in *Dodge v. Board of Education*, "[A]n act merely fixing salaries of officers creates no contract in their favor, and the compensation named may be altered at the will of the Legislature. This is true also of an act fixing the term or tenure of a public officer or an employee of a state agency. The presumption is that such a law is not intended to create private contractual

or vested rights, but merely declares a policy to be pursued until the Legislature shall ordain otherwise." *Dodge v. Board of Educ. of the City of Chicago*, 302 U.S. 74, 78-9 (1937).

The presumption of which the Supreme Court speaks is a necessary one because of the impairment of contracts clauses of both the United States and Texas Constitutions. Article I, section 10 of the United States Constitution provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." Similarly, article I, section 16 of the Texas Constitution provides that "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." If therefore any act of the Texas Legislature were construed to create a contractual obligation or grant a vested right, such act might be beyond the power of a later legislature to alter, amend, or abolish. The Supreme Court of Texas analyzed this difficulty in the same year in which the U.S. Supreme Court considered the *Dodge* case, and in relation to the same issue – the reduction of government pensions necessitated by the Great Depression. In *City of Dallas v. Trammell*, 101 S.W.2d 1009 (Tex. 1937), a retired policeman sued the City of Dallas, arguing that by reducing his pension pursuant to a statute enacted by the 44th Legislature, the City had deprived him of a vested right.

As the court framed the question presented, "[I]s the Legislature without constitutional power to repeal the laws upon which the pension system of the City of Dallas is based, or to modify their provisions in such way as to diminish the pensions payable to those who have become qualified to receive them so long as any one who has been granted a pension shall live?" *Trammell*, 101 S.W.2d at 1011. The court answered this question in the negative: "In our opinion, the rule that the right of a pensioner to receive monthly payments from the pension fund after retirement from service, or after his right to participate in the fund has accrued, is predicated upon the anticipated continuance of existing laws, and is subordinate to the right of the Legislature to abolish the pension system, or diminish the accrued benefits of pensioners thereunder, is undoubtedly the sound rule to be adopted." *Id.* at 1013. In so holding the *Trammell* court quoted with approval the following language from the Supreme Court of Illinois' decision in the *Dodge* case: "A right, to be within the protection of the Constitution, must be a vested right. *It must be something more than a mere expectancy based upon an anticipated continuance of an existing law.* If before rights become vested in particular individuals the convenience of the State induces amendment or repeal, such individuals have no cause to complain." *Id.* at 1014 (*quoting Dodge v. Board of Education*, 5 N.E.2d 84, 86 (Ill. 1936)) (emphasis added).

The principle underlying these decisions was clearly enunciated by Justice Marshall in *National Railroad Passenger Corporation v. Atchison, Topeka and Santa Fe Railway Company*, 470 U.S. 451 (1985): "[T]he principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state. Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body." *Id.* at 466.

That principle, and the *Trammell* case itself, have been repeatedly reaffirmed by Texas courts in a variety of contexts. In *Cook v. Employees Retirement System of Texas*, the Texarkana appellate

court denied a claim by the widow of a deceased fireman that her children were entitled to continue to receive certain benefits until they were twenty-one years of age, despite the fact that the legislature had lowered the age of majority to eighteen. "Appellant's position is that Article I, Sec. 16 of the Texas Constitution, Vernon's Ann. St., and Article 1, Sec. 10 of the United States Constitution forbid[] any retroactive laws from being passed which would impair the obligation under any contract. Appellant states that the rights of the children were vested before the 'eighteen year old law' . . . became effective on August 27, 1973." *Cook*, 514 S.W.2d at 330. The court rejected this contention, reaffirming "the established rule that all . . . benefits created by the Texas Legislature for the benefit of employees and other personnel of this State . . . shall be subordinate to the right of the Legislature to abolish the system, diminish the accrued benefits, increase the benefits, change the eligibility for benefits or to otherwise alter or modify the method of payment of the benefits of any or all such funds." *Id.* at 331.

Similarly in *Lack v. Lack*, 584 S.W.2d 896, 899 (Tex. Civ. App.–Dallas 1979, writ ref'd n.r.e.), it was held that the inchoate contingent interest of a pensioner's ex-wife in his death benefits could be divested by the Legislature; and in *Reames v. Police Officers' Pension Board of the City of Houston*, 928 S.W.2d 628 (Tex. App.–Houston [14th Dist.] 1996, no writ), the court held that it was not an impairment of a vested right for a retired policeman who had been effectively re-employed by the City of Houston when it restructured the airport police for whom he had been working to be divested of his pension: "[A] pensioner in a statutory pension plan does not have a vested right to his pension. He merely has an expectancy based upon anticipated continuance of existing law. 'The Legislature which created it can recall its bounty at its discretion.'" *Reames*, 928 S.W.2d at 632 (*quoting Trammell*, 101 S.W.2d at 1014).

Based on the principle and the precedents we have set forth, it is our view that, while the cash value which might have been realized by certain A&M employees had they separated from state service on or before August 31, 1997, was materially diminished by the amendment of section 661.063 of the Government Code effective September 1, 1997, those employees had no vested right to that cash value, or to the method of computing payment for accrued vacation leave by which it was arrived at. They had a mere expectancy based upon the anticipated continuation of the old computation formula. The Legislature had every right to change that formula, and by the amendment of section 661.063 it exercised that right. Accordingly, the A&M employees in question have suffered no constitutional injury by the amendment of section 661.063.

As your second question, like your first, presupposes a vested right to the former method of computation, we do not consider it.

## S U M M A R Y

State employees have no vested right in the method of calculating compensation for vacation benefits that pre-dated the amendment of section 661.063 of the Government Code by the 75th Legislature. Accordingly, such amendment abrogates no vested rights, and does not violate article I, section 10 of the United States Constitution or article I, section 16 of the Texas Constitution.

Yours very truly,

JOHN CORNYN
Attorney General of Texas


ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General - Opinion Committee